**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Hatten, | No. CV-20-00099-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Grobet USA, et al., | |
| Defendants. | |

On February 4, 2020, Plaintiff Renee Hatten filed a wrongful death action in the Pima County Superior Court alleging that as a result of Defendants' actions, her mother, Janis Friend, contracted mesothelioma from exposure to asbestos-containing products between 1977 and 1979, while working as an art teacher and jewelry-making instructor at Fort Huachuca.  In Plaintiff's Complaint, she alleges causes of action for negligence, strict liability, intentional failure to warn, and punitive damages against five Defendants: (1) Grobet File Company of America, LLC; (2) Triarco Arts & Crafts LLC; (3) R.T. Vanderbilt Holding Company, Inc.; (4) Posner's Art Store, Inc.; and (5) Unknown Parties, named as fictitious defendants, First Doe through Seventy-Fifth Doe.

On March 9, 2020, Defendant Grobet filed a notice of removal to federal court, asserting that this Court has federal enclave jurisdiction over Plaintiff's claims as well as diversity jurisdiction over the suit. Grobet claims that Posner's—the lone Arizona citizen Defendant—should be ignored for purposes of determining diversity because Posner's was fraudulently joined. (Doc. 1.)  Now before the Court is Plaintiff's Motion to Remand to

1   State Court.  (Doc. 12.)  For the reasons stated, the Court will grant the Motion to Remand.

2                                      **DISCUSSION**

3   **I.    Diversity Jurisdiction**

4         Plaintiff argues that this case should be remanded because Defendant Grobet's

5   Notice of Removal was procedurally defective in that it failed to include proof of consent

6   of all Defendants,[1] because Defendant Posner's is an Arizona resident and the Court

7   therefore lacks diversity jurisdiction over the suit, and because the Court does not have

8   federal enclave jurisdiction.

9         When a civil suit is removed from state court on the basis of diversity jurisdiction,

10  "all defendants who have been properly joined and served must join in or consent to the

11  removal of the action."  28 U.S.C. § 1446 (b)(2)(A).  Moreover, a state court action "shall

12  be removable only if none of the parties in interest properly joined and served as defendants

13  is a citizen of the State in which such action is brought."  28 U.S.C. § 1446 (b).  The burden

14  of establishing federal jurisdiction is on the party seeking removal, and the removal statute

15  is construed strictly against removal.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195

16  (9th Cir. 1988).  "The defendant seeking removal is entitled to present facts showing that

17  [a] joinder is fraudulent."  *Good v. Prudential Ins. Co. of America*, 5 F.Supp.2d 804, 807

18  (N.D. Cal. 1998); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001)

19  (quoting *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)

---

21          [1]  Under the unanimity rule, "all defendants who have been properly joined and
22  served must join in or consent to the removal of [an] action."  28 U.S.C. § 1446(b)(2)(A).
    The Court finds that this rule has been satisfied.  The three Defendants that Grobet does
    not contend to be fraudulently joined filed either a timely answer or motion to dismiss in
23  this action.  *See e.g.*, *Cobian-Perez v. Pers. Protective Servs., Inc.*, No. C-13-5162 EMC,
24  2014 WL 342660, at *4 (N.D. Cal. Jan. 28, 2014) (where non-removing defendant was
    properly served prior to removal but failed to convey consent in the removal notice,
    removing defendant cured the defect by submitting a declaration "stating that, post-
25  removal, he received an e-mail from counsel for [the non-removing defendant] stating that
    he consents to removal"); *Gerawan Farming, Inc. v. Worrel & Worell*, No. 1:10CV02011
26  AWI DLB, 2011 WL 202453, at *2 (E.D. Cal. Jan. 20, 2011) ("An answer filed within the
    specified time [set forth in section 1446(b)] may be deemed consent of the non-joining
27  defendant to removal."); *Manikan v. Pac. Ridge Neighborhood Homeowners Ass'n*, No.
    17-CV-00467-BEN-BLM, 2017 WL 2953958, at *3 (S.D. Cal. July 10, 2017) (finding that
28  non-removing defendants manifested consent to removal by "never object[ing] to the
    removal and, instead, fil[ing] a motion to dismiss under Rule 12(b)(6) within the time
    period given to oppose removal").

                                        - 2 -

("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."))

Defendant Grobet contends both that the notice of removal was proper and that the requisite diversity between citizens exists because Defendant Posner's was fraudulently joined.[2] "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods. Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The removing defendant has "the opportunity to show that the individual[] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

In the Complaint here, Plaintiff alleges claims stemming from Janis Friend's exposure to asbestos and asbestos-containing products generally against all Defendants, rather than specifically against each one. Defendant Grobet argues that because the Complaint offers no allegations specific to Defendant Posner's Art Store, Inc., and because Posner's was not named in a lawsuit previously brought against all other named Defendants in Illinois, and not mentioned at any point during the discovery conducted during that lawsuit, the claims against Posner's in this suit are frivolous. Plaintiff argues that she has asserted state law negligence and strict liability claims against Posner's, which have long been recognized under Arizona law, and that Grobet is asking the Court to, in essence, conduct a summary judgment review of the claim, rather than to discern whether Plaintiff's failure to state a cause of action "is obvious according to the settled rules of the state." *McCabe*, 811 F.2d at 1339. Plaintiff further argues that Grobet "has not brought a Fed. R. Civ. P. 12(b)(6) or 12(e) motion in this Court," and that "Grobet has no standing to make such a challenge[.]" (Doc. 18, pg. 4.)

Although the discovery in the prior Illinois action, devoid of any reference to Posner's, does lend credence to Grobet's argument that Posner's has been joined merely to

---

[2] The term "fraudulent joinder" is a term of art, used for removal purposes, and does not connote any intent to deceive on the part of plaintiff or his counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979).

1   defeat diversity jurisdiction, the Court does not find the absence of any mention of Posner's
2   dispositive.  Plaintiff, for any number of reasons, might have subsequently stumbled upon
3   information indicating Posner's connection to Janis Friend's alleged exposure.  As for
4   Grobet's argument that the Complaint contains no allegations specific to Posner's, the
5   Court finds the guidance provided in *Grancare, LLC v. Thrower by and through Mills*, 889
6   F.3d 543 (9th Cir. 2018), controlling.

7         In *Grancare*, the Ninth Circuit Court of Appeals held that although "the fraudulent
8   joinder standard shares some similarities with the analysis under Rule 12(b)(6) . . . . the
9   test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not
10  equivalent."  *Id.* at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but
11  that defendant has not necessarily been fraudulently joined.").  The Circuit Court reiterated,
12  from a previous holding, that the most appropriate standard for assessing fraudulent joinder
13  was whether there is a "possibility that a state court would find that the complaint states a
14  cause of action against any of the [non-diverse] defendants."  *Id.* quoting *Hunter v. Philip
15  Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).

16        Plaintiff alleges colorable claims against Posner's for negligence, strict liability, and
17  failure to warn.  And though the Complaint alleges claims generally against all Defendants,
18  in *Grancare* too, the appellant argued that the complaint alleged "misconduct against all
19  defendants collectively, that the heirs did not plead their claims with sufficient
20  particularity, and that the heirs did not sufficiently allege negligence," but the Circuit Court
21  nonetheless concluded that these arguments went "to the sufficiency of the complaint,
22  rather than to the possible viability of the heirs' claims against [the alleged fraudulently
23  joined party]," and therefore did "not establish fraudulent joinder."  *Grancare*, 889 F.3d at
24  552.  In sum, although Grobet has highlighted significant deficiencies in the generality of
25  the Complaint, Grobet has not demonstrated that there is no possibility that Plaintiff could
26  prevail against Posner's, and that the Court therefore has diversity jurisdiction over this
27  suit.[3]

28
        [3]  Grobet asks the Court to take judicial notice of 1991 article from the *Tucson
Citizen* newspaper stating that the owner who acquired Posner's opened a store location in

- 4 -

## II.    Federal Enclave Jurisdiction

Plaintiff additionally argues that a remand is appropriate because the Court lacks federal enclave jurisdiction over the suit—specifically, because during the dates of the alleged offenses, the Federal Government merely had a proprietary interest, rather than exclusive jurisdiction, over Fort Huachuca where Janis Friend worked, or at least that Defendant cannot establish that the Federal Government's interest was exclusive.

Federal question jurisdiction arises exists only when a plaintiff's claims arise under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, and depends solely on plaintiff's claims for relief as pled in the complaint.  *ARCO Env. Remediation, L.L.C. v. Dept. of Health and Env. Quality of the State of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000).  Pursuant to the Constitution, the United States has the power to acquire land from the states for certain specified uses and to exercise exclusive jurisdiction over such lands, which are known as "federal enclaves."  *Lord v. Local Union No. 20, Int'l Bd. of Elec. Workers*, 646 F.2d 1057, 1059 (5th Cir. 1981).  Cases involving state law claims on federal enclave property subject to non-exclusive jurisdiction—be it concurrent state and federal jurisdiction or solely proprietary jurisdiction—do not, ordinarily, present a federal question.  *Community Housing P'ship v. Byrd*, No. 13-3031, 2013 WL 6087350, at *4 (N.D. Cal. Nov. 19, 2013). "It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land" as provided by 40 U.S.C. § 3112—requiring that the Government file "a notice of acceptance [of consent to jurisdiction over land] with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated."  40 U.S.C. § 3112 (b)-(c).

---

Sierra Vista, AZ, between 1984 and 1986, which Grobet argues is dispositive because Sierra Vista is supposedly the location where Janis Friend supposedly purchased art clay. (Doc. 20.)  Setting aside whether the Court may or may not take notice of the substance of this article, the Court does not find that the article changes the outcome on this issue.  As Plaintiff indicates, Posner's did have a location in Tucson during the relative time frame, and Plaintiff's argument in her reply brief supporting a remand highlighted that Ms. Friend's deposition indicated that suppliers other than the named Defendants in the Illinois suit might have been involved—but not necessarily that only one other previously unnamed Defendant, now identified as Posner's, was involved.  The Court takes Grobet's point that the Complaint provides little specific information attributable to each Defendant, but under the Ninth Circuit's standard, nonetheless holds firm to the conclusion that Grobet has not established diversity jurisdiction.

1       Plaintiff alleges that Janis Friend was exposed to toxic substances, which eventually

2   caused her wrongful death, while employed as an art teacher and jewelry-making instructor

3   at Fort Huachuca between approximately 1977 and 1979.  (Doc. 1, exh. 1, ¶ 14.)  The Court

4   must determine, therefore, whether the art studio at the Fort during the relevant time period

5   was subject to exclusive or nonexclusive Federal Government jurisdiction during the

6   relevant time frame.  To answer this question, the parties have submitted to the Court

7   Chapter 96 of the 1951 Arizona Session Laws 200, a history of Fort Huachuca from the

8   U.S. Military website (Doc. 1, exh. 2), and a 1962 Inventory Report on Jurisdictional Status

9   of Federal Areas Within the States.  (Doc. 12-5.)

10      The 1951 Session Laws state that "[t]he consent of the state of Arizona is hereby

11  given . . . to the acquisition by the United States . . . of any land in this State required for

12  the erection of forts . . . or for any other military installations of the government[.]"  1951

13  Ariz. Sess. Laws 200, ch. 96, sec. 1 (effective Mar. 27, 1951).  Further, "[e]xculsive

14  jurisdiction over any land in this State so acquired for any of the purposes aforesaid, and

15  over any public domain land in this state, now or in the future reserved or used for military

16  purposes, is hereby ceded to the United States," but for no longer than the land is used for

17  military purposes.  *Id.* at sec. 2.  Finally, "[a]s to any land over which exclusive jurisdiction

18  is herein ceded, the state of Arizona retains concurrent jurisdiction within the United States,

19  so far, that all process, civil or criminal, issuing under the authority of this State . . . may

20  be executed by the proper officers."  *Id.* at sec. 3.

21      Consistent with the Session Laws, the Inventory Report details that from 1951 to

22  1956, the Government acquired exclusive federal jurisdiction of 48,177 acres of land

23  affiliated with Fort Huachuca.  (Doc. 12-5, pg. 39).  On March 8, 1956, the federal

24  government appears to have formally accepted the grant.  The Report also details that

25  between 1956 and 1962, the Government acquired a proprietorial interest in an additional

26  23,666 acres of land affiliated with the Fort.  (*Id.*)  Plaintiff argues that "[a]s the party with

27  the burden of proof, Grobet has failed to prove that Decedent Janis Friend was exposed to

28

asbestos on the original 48,000 acres . . . , as opposed to the additional 51,000 acres[.]"[4] (Doc. 18, pg. 8.)  Grobet, in turn, argues that the fact that in 1956 the federal government accepted jurisdiction over 48,177 acres of Fort Huachuca, in conjunction with the Session Laws, confirms that the federal government accepted the requisite jurisdiction—and that this conclusion is buttressed by a March 8, 1956 letter from "Secretary of Army Wilber M. Brucker inform[ing] the Governor of Arizona that the United States accepted exclusive jurisdiction over the military installation designated as Fort Huachuca." (Doc. 17, pgs. 15-16.)

Although Grobet's Notice of Removal contained a reference to Secretary Brucker's letter, Grobet did not include a copy of the document for the Court's review.  Without having conducted an exhaustive search, the Court did not locate the letter elsewhere, but did locate a Report of a Special Master in a case addressing adjudication of water rights,[5] in which the Special Master referred to the letter, summarizing its contents as stating:

> [N]otice is hereby given that the United States accepts exclusive jurisdiction over the entire area of the military instillation designated as Fort Huachuca . . . with the exception of 160 acres of school land of the State of Arizona leased to the United States and 960 acres of public domain land not yet transferred from the Department of the Interior.  The area over which the United States hereby accepts exclusive jurisdiction comprises approximately 48,177 acres of lands acquired by the United States for military purposes.

*Id.* at pgs. 57-58, Finding of Fact No. 109.  Even if the Court were to consider the contents of this letter as quoted in the Special Master report, the Court cannot be assured that the buildings in which Janis Friend taught arts and crafts to military personnel and their family members (Doc. 17, exh. 4, pgs. 237-28), were located on the 48,177 acres of Fort Huachuca over which the federal government accepted exclusive jurisdiction as opposed to either the

---

[4] Plaintiff's reference to 51,000 acres accounts for land over which the Government acquired a proprietary interest in 1943, affiliated with "Huachuca Ft. Wilcox area," and 640 acres, affiliated with "Huachuca Ft. Gila Bend." (Doc. 12-5, pg. 39.)

[5] *In re the General Adjudication of All Rights to Use Water in the Gila River System and Source, In re Fort Huachuca*, Contested Case No. W1-11-605, Superior Court for the County of Maricopa (Apr. 4, 2008).

160 acres of school land, 960 acres of public domain land, or 23,666 later-ceded acres of Fort Huachuca land, to which it did not.  Grobet's website submission from the U.S. Army website confirms that Fort Huachuca is in large part a military base, but the fact that part of the Fort's territory is unquestionably military controlled and under exclusive federal jurisdiction is not seriously contested by the parties.  And, importantly, that fact does not answer the question of the location of the events at issue in this suit.  Grobet, as the party seeking removal, has the burden of establishing federal jurisdiction.  Because Grobet has not established whether the acts at issue in this case occurred on a federal enclave subject to exclusive federal jurisdiction, the Court concludes that Grobet has not satisfied its burden.

## CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff's Motion to Remand (Doc. 12) is GRANTED.  The Clerk of Court shall provide Pima County Superior Court with electronic notification that the case has been remanded so that it may reconvene its proceedings;

IT IS FURTHER ORDERED that the Clerk of Court is directed to close the file in this case.

Dated this 26th day of July, 2020.


Honorable Jennifer G. Zipps
United States District Judge